## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| Howard Grant Ritchey, Jr., DDS, | § | |
| | § | |
| *Plaintiff* | § | **Jury Trial Demanded** |
| | § | |
| v. | § | |
| | § | Case No. _____ |
| Security 1st Title, LLC, Pia Friend d/b/a | § | |
| Pia Friend Realty, Movement Mortgage, | § | |
| LLC, ZT Trading LLC, and John Doe | § | |
| #1-5, | § | |
| | § | |
| *Defendants* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff Howard Grant Ritchey, Jr., DDS brings this lawsuit against Defendants Security 1st Title, LLC ("Security 1st"), Pia Friend d/b/a Pia Friend Realty ("Friend Realty"), Movement Mortgage, LLC ("MM"), ZT Trading LLC ("ZT"), and John Doe #1-5 seeking damages, penalties, punitive damages, attorneys' fees, and costs for their actions and inactions that caused Dr. Ritchey to become the victim of a notorious real-estate cyberfraud scheme.

### SUMMARY

Dr. Ritchey's claims arise from the theft of nearly $90,000 that was intended to be used by him as a down payment to purchase a home located in Lawrence, Kansas. Dr. Ritchey wired the funds after his title company, Security 1st, and his real estate agency, Friend Realty, instructed him to do so. But prior to closing, he discovered Security 1st did not have possession of the payment he wired. As Dr. Ritchey later learned, he was the victim of well-known cybercrime caused by Security 1st, Friend Realty, and his lender, MM. They failed to adopt easily employable safeguards against unauthorized access to their email accounts and computer systems. And as a result, ZT and unknown individuals were able to impersonate several parties involved in the real-estate transaction and deceive Dr. Ritchey into authorizing his financial institution to wire $98,030 and later $88,338 into a bank account controlled by ZT and the unknown individuals. Despite knowing this

exact type of cyberfraud is a notorious danger in the real-estate industry, Security 1st, Friend Realty, and MM failed to inform Dr. Ritchey of the scheme or of the steps he could have used to prevent it from happening to him. Dr. Ritchey brings this action to recover his damages and punish Defendants for their misconduct.

## PARTIES

1.      Plaintiff Dr. Ritchey is a resident of Douglas County, Kansas.

2.      Defendant Security 1st is a Kansas limited liability company with its principal place of business located at 727 N. Waco, Suite 300, Wichita, Kansas 67203. Security 1st may be served through its registered agent, Terry Pilgreen, at 229 E. William, Suite 201, Wichita, Kansas 67202.

3.      Defendant Friend Realty is an individual operating under the trade name Pia Friend Realty. Friend Realty may be served at its principal place of business located at 524 Liberty Street, Oskaloosa, Kansas 66066.

4.      Defendant MM is a Delaware limited liability company with its principal place of business located at 8024 Calvin Hall Road, Indian Land, South Carolina 29707. MM may be served through its registered agent, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

5.      Defendant ZT is a Georgia limited liability company with its principal place of business located at 1222 Meadowood Lane, Douglasville, Georgia 30135, where it may be served.

6.      Defendants John Doe #1-5 are individuals whose identities are currently unknown. Defendants John Doe #1-5 fraudulently deceived Dr. Ritchey into authorizing a wire transfer of $88,338. Defendants John Doe #1-5 acquired the $88,338 through the wrongful deceit and fraudulent actions against Dr. Ritchey. Upon discovery of the identifies of John Doe #1-5, Dr. Ritchey will amend his Complaint to identify the unknown Defendants.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over the subject matter of this dispute at least pursuant to 28 U.S.C. §§ 1331 and 1367(a).

8.      The Court has personal jurisdiction over Security 1st and Friend Realty because their principal places of business are in Kansas. The Court has personal jurisdiction over MM because it transacts business in Kansas, is licensed in Kansas, has committed tortious acts in Kansas, has contracted with Dr. Ritchey in Kansas, has entered into other contracts performed in Kansas, and has general business contacts in Kansas that are continuous and systematic. MM's internet activity also establishes personal jurisdiction as its website is used for transacting business and is sufficiently interactive to support jurisdiction. The Court has personal jurisdiction over ZT and John Doe #1-5 because their tortious acts were committed in Kansas.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) at least because the transaction at issue was negotiated, executed, and performed within this District for the purchase of real property located in this District. Defendants also regularly conduct business within this District.

## BACKGROUND

10.      On or about March 16, 2017, Dr. Ritchey entered into a contract with Joseph and Molly Flannery to purchase a home located at 1614 Hillcrest Road, Lawrence, Kansas 66044 at an agreed upon price of $485,000. He contracted with Security 1st to perform closing services for the purchase of the home and with Friend Realty to act as his real estate agent. Closing was originally scheduled for May 5, 2017.

11.      The day before the scheduled closing, Dr. Ritchey received an email from his real-estate agent, Darrell Mooney of Friend Realty, copying Security 1st and the seller's agent, asking him to arrange the wire transfer of a $98,030 down payment to be sent that day. Friend Realty stated it is Security 1st's policy to receive the down payment a day before closing, and asked Security 1st to send wire instructions to Dr. Ritchey.

12.      Security 1st responded to Friend Realty's email, directing Dr. Ritchey to wire the down payment. Security 1st attached wire instructions on its letterhead that stated the transfer should be directed to Pinellas Federal Credit Union for credit to Sondra Neri. Dr. Ritchey replied,

stating he would try to wire the payment that day as directed. Mooney asked Dr. Ritchey to let him know once the wire transfer was completed. Ultimately, closing was extended, and the funds were not transferred that day.

13.     On May 10, 2017, Friend Realty emailed Dr. Ritchey and again asked him to wire the $98,030 down payment that day in advance of closing. Security 1st confirmed the wire transfer should be sent according to the wire instructions it sent on May 4, 2017. Based on Friend Realty and Security 1st's instructions, Dr. Ritchey directed his bank to wire $98,030 to Pinellas Federal Credit Union for credit to Sondra Neri on May 10, 2017.

14.     The next day, Security 1st emailed Dr. Ritchey stating the cash due at closing was not $98,030 but instead $88,338. Security 1st stated it instructed Pinellas Federal Credit Union to return the previously wired $98,030 and asked that Dr. Ritchey wire $88,338 once he received the refunded $98,030. Friend Realty responded and told Dr. Ritchey this was good news. Security 1st then provided updated wire instructions that directed Dr. Ritchey to transfer the $88,338 payment to Suntrust Bank with credit to ZT. Dr. Ritchey did as Friend Realty and Security 1st instructed him. After he received the $98,030 refund, Dr. Ritchey directed his bank to wire $88,338 to Suntrust. He received confirmation that Suntrust received the wire.

15.     After the wire transfer, Dr. Ritchey communicated with Friend Realty and Security 1st, as well as others involved in the home purchase process, regarding schedule changes and other updates related to the closing, which was ultimately held on the evening of May 16, 2017—6 days after Dr. Ritchey wired $88,338 to Suntrust.

16.     On May 16, 2017, prior to that evening's closing, Dr. Ritchey's lender, Silver Lake Bank, directed him to wire $9,692 to cover the difference between the $98,030 and $88,338 down payments. Security 1st responded to Silver Lake and provided new wire instructions directing Dr. Ritchey make the wire to Wells Fargo with credit to Thadryanna Mosley. Friend Realty responded and told Dr. Ritchey the wire needed to be completed prior to the 7:00 p.m. closing.

17.     Frustrated with being asked to wire an additional $9,692, Dr. Ritchey called Silver Lake. He then forwarded the email chain to Silver Lake, Security 1st, and Friend Realty. Silver

Lake responded: "So apparently your email account was hacked." There is, however, no evidence that Dr. Ritchey—the homebuyer—had *his* email account hacked. Instead, on information and belief, Security 1st, Friend Realty, and/or MM—the parties regularly involved in real-estate trans-actions—had *their* email accounts hacked. The hacker used signature blocks from all parties in-volved and email addresses confusingly similar to the "real" email addresses (with names of the email account listed so the email address was not visible). Security 1st, Friend Realty, and MM communicated directly with the hacker as well, with Friend Realty even stating the emails "look real" after the fact. Even the wiring instructions were on Security 1st letterhead.

18.     The parties informed Dr. Ritchey that the only way to close the real estate transac-tion was to come up with an additional $98,030. Determined yet distraught over the shocking turn of events, the apparent loss of $88,338, and the information conveyed by those involved that this happened as a result of *his* email being hacked, Dr. Ritchey withdrew funds from his retirement account (with penalties) and wired $98,030 to close the transaction.

19.     After learning Security 1st did not have his $88,338 down payment in escrow, Dr. Ritchey immediately contacted the FBI Internet Crime Complaint Center. His money, however, was no longer with Suntrust. To date, Dr. Ritchey has not recovered any portion of the $88,338 that Security 1st was supposed to hold in escrow, and that was wired pursuant to Security 1st and Friend Realty's instructions.

20.     Roughly a year later, due in part to the financial strain caused by the loss of $88,338, Dr. Ritchey was forced to sell his home and move into a rental property.

## CAUSES OF ACTION

**Count 1: Negligence (Security 1st, Friend Realty, and MM)**

21.     Dr. Ritchey incorporates by reference the preceding paragraphs.

22.     Security 1st, Friend Realty, MM, and their employees and agents owed duties to Dr. Ritchey, including duties to act reasonably in relation to his real-estate transaction.

23.     Security 1st, Friend Realty, and MM breached their duties by failing to enact adequate security measures to protect against cybercrime. Mooney even used his unsecure personal email account for communications related to the real-estate transaction.

24.     On information and belief, these Defendants failed to take even basic security measures to secure their email accounts, including but not limited to:

      a.     Using an email address that requires additional forms of authentication;

      b.     Using digital, encrypted signatures for messages;

      c.     Using encrypted email with clients; and

      d.     Using strong passwords that are frequently changed.

25.     Security 1st and Friend Realty also breached their duties to Dr. Ritchey by failing to inform him of how the payment would be made, that wiring instructions would not be sent via email, and by generally failing to inform him of basic information regarding closing. Neither Security 1st nor Friend Realty ever informed Dr. Ritchey that payment was not expected to be made via wire, for example.

26.     In addition, Security 1st and Friend Realty breached their duties to Dr. Ritchey by failing to provide him wire communication or cyberfraud warnings. It has come to Dr. Ritchey's attention that cybercrime—and this hacking scheme in particular—was a well-known risk within the real-estate industry at the time of his home purchase. In fact, the FBI reported business email compromises caused over $675 million in adjusted losses in 2017, up from over $360 million in adjusted losses in 2016.

27.     Real-estate trade associations had already repeatedly warned title companies and real-estate agencies to avoid sending sensitive information via email, use encrypted email if sending such information via email, and to use strong passwords that are regularly changed. These associations had also instructed title companies and real-estate agencies to inform their clients of these procedures and notify them of cyberfraud risks and "red flags" before the real-estate transaction. Security 1st and Friend Realty received these industry warnings and instructions before they transacted business with Dr. Ritchey.

28.     Despite being industry specialists well aware of these established practices, Security 1st and Friend Realty expressly chose not to employ them. In fact, months before it contracted with Dr. Ritchey, Security 1st stated on its website that "cyberfraud in real estate is still occurring and will be for a long, long time."[1] On the same page it published a 30-page handout from the National Association of Realtors titled "Protecting Your Business *and Your Clients* from Cyberfraud."[2] Among other things, the handout states: "From the very start of any transaction, *communicate and educate*. Get all parties to the transaction up to speed on fraud 'red flags,' and make sure everyone implements secure email practices."[3] It also directs the parties involved to inform the buyer to call the title company immediately before sending funds via wire to verify the wiring instructions. Although acutely aware of this information at the time of Dr. Ritchey's real-estate transaction, Security 1st ignored it, and failed to warn Dr. Ritchey. Shortly after Dr. Ritchey was damaged, however, Security 1st published a document regarding cyberfraud red flags in real-estate transactions.[4]

29.     Security 1st, Friend Realty, and MM's negligence proximately and directly caused Dr. Ritchey's loss of $88,338 and other actual damages.

30.     Security 1st, Friend Realty, and MM's actions and inactions caused Dr. Ritchey reasonably foreseeable damages. They are liable to Dr. Ritchey for his loss.

## Count 2: Violations of the Kansas Consumer Protection Act – KSA 50-623 (Security 1st)

31.     Dr. Ritchey incorporates by reference the preceding paragraphs.

32.     Security 1st is a supplier under the KCPA.

33.     Dr. Ritchey was a consumer under the KCPA.

---

[1]   Exhibit A.
[2]   Exhibit B (emphasis added).
[3]   *Id.* (emphasis in original).
[4]   Exhibit C.

34.     In the course of a consumer transaction, Security 1st engaged in deceptive practices by making representations made knowingly or with reason to know its services have characteristics and benefits they do not have. Specifically, that it employed secure and leading technology solutions in connection with its services.

35.     In the course of a consumer transaction, Security 1st engaged in deceptive practices also by its willful failure to state material facts, or the willful concealment, suppression, or omission of material facts. Specifically, that cybercrime and the email hacking scheme at issue here are well known dangers in the real-estate industry that may be avoided by knowledge of them and by invoking safeguards.

36.     Dr. Ritchey seeks a civil penalty for each violation, reasonable attorneys' fees, and costs.

## Count 3: Breach of Contract (Security 1st and Friend Realty)

37.     Dr. Ritchey incorporates by reference the preceding paragraphs.

38.     Security 1st and Friend Realty entered into a contract with Dr. Ritchey.

39.     Security 1st and Friend Realty breached their obligations under the contract by failing to enact proper security measures and protect Dr. Ritchey's assets.

40.     On information and belief, Security 1st and Friend Realty failed to take even basic security measures to secure their email accounts, including but not limited to:

      a.     Using an email address that requires additional forms of authentication;

      b.     Using digital, encrypted signatures for messages;

      c.     Using encrypted email with clients; and

      d.     Using strong passwords that are frequently changed.

41.     Security 1st and Friend Realty's breach of contract was the proximate and direct cause of Dr. Ritchey's loss of $88,338 and other actual damages.

42.     Security 1st and Friend Realty are liable to Dr. Ritchey for his damages.

## Count 4: Breach of Covenant of Good Faith and Fair Dealing (Security 1st)

43.     Dr. Ritchey incorporates by reference the preceding paragraphs.

44.     Security 1st intentionally and purposefully prevented Dr. Ritchey from carrying out his part of the agreement by failing to protect his financial information and funds wired into escrow.

45.     Security 1st's breach of the implied covenant of good faith and fair dealing was the proximate cause of Dr. Ritchey's damages. Security 1st is liable to Dr. Ritchey for his damages.

**Count 5: Breach of Fiduciary Duties (Security 1st)**

46.     Dr. Ritchey incorporates by reference the preceding paragraphs.

47.     Security 1st owed Dr. Ritchey fiduciary duties to protect his financial information and assets and hold his funds for the real-estate transaction in escrow. Security 1st's duties obligated it to adopt reasonable and necessary measures to safeguard its email accounts, servers, and computer systems against intrusion by cybercriminals.

48.     Security 1st breached its fiduciary duties by, among other things, failing to protect Dr. Ritchey's financial information and assets and hold them in escrow. Security 1st ignored its duties by failing to adopt even the most basic safeguards against unauthorized access. Security 1st's acts and omissions permitted cybercriminals to hack into the real-estate transaction email chain. As a result, cybercriminals were able to impersonate numerous parties involved in the transaction, including Dr. Ritchey, Security 1st, Friend Realty, the seller's agent, MM, and Silver Lake, and deceive Dr. Ritchey into authorizing his financial institution to wire $98,030 and later $88,338 into a bank account controlled by the cybercriminals.

49.     Security 1st's breach of its fiduciary duties was the direct and proximate cause of Dr. Ritchey's loss of $88,338 and other actual damages.

50.     Security 1st is liable to Dr. Ritchey for his damages.

**Count 6:  Violation of the Electronic Communications Privacy Act – 18 U.S.C. § 2511 (ZT and John Doe #1-5)**

51.     Dr. Ritchey incorporates by reference the preceding paragraphs.

**Plaintiff's Original Complaint**                                                                          **9**

52.     Defendants ZT and John Doe #1-5 intentionally intercepted (or procured another person to intercept) wire and electronic communications. ZT and John Doe #1-5 intentionally used, and disclosed to another person, the contents of wire and electronic communications knowing the information was obtained through the intentional interception of wire and electronic communications.

53.     Dr. Ritchey seeks his actual damages, any profits made by ZT and John Doe #1-5, attorneys' fees and expenses, and punitive damages for ZT and John Doe #1-5's violation of the Electronic Communications Privacy Act.

**Count 7: Violation of the Stored Communications Act – 18 U.S.C. § 2701 (ZT and John Doe #1-5)**

54.     Dr. Ritchey incorporates by reference the preceding paragraphs.

55.     Defendants ZT and John Doe #1-5 intentionally and willfully accessed without authorization a facility through which an electronic communication service is provided. They thereby obtained, altered, and prevented authorized access to an electronic communication while in electronic storage.

56.     Dr. Ritchey seeks his actual damages, attorneys' fees and expenses, and punitive damages for ZT and John Doe 1-5's violation of the Stored Communications Act.

### PUNITIVE DAMAGES

57.     Dr. Ritchey incorporates by reference the preceding paragraphs.

58.     Dr. Ritchey seeks punitive damages against all Defendants, not to exceed the lesser of: (a) $5,000,000; (b) or Defendants' annual gross income, as determined based on their highest gross annual income earned for any one of the five years immediately before Defendants' wrongful acts began. *See* KSA 60-3701. Defendants acted with a realization of the imminence of danger imposed by this well-known industry email hacking risk and a reckless disregard to the probable loss of Dr. Ritchey's funds. Their conduct toward Dr. Ritchey was willful, wanton, or with fraud

or malice. Punitive damages are necessary to further the purpose of restraining and deterring others from committing wrongs similar to those committed by Defendants.

59.     Dr. Ritchey also seeks punitive damages from ZT and John Doe #1-5 under 18 U.S.C. §§ 2520(b) and 2707(c).

## ATTORNEYS' FEES

60.     Dr. Ritchey incorporates by reference the preceding paragraphs.

61.     Dr. Ritchey retained counsel to represent him in this action and agreed to pay reasonable and necessary attorneys' fees. Dr. Ritchey is entitled to recover his attorneys' fees from Security 1st under KSA 50-634(e). He is entitled to recover his attorneys' fees from ZT and John Doe #1-5 under 18 U.S.C. §§ 2520(b)(3) and 2707(b)(3) and (c).

## DEMAND FOR JURY TRIAL

62.     Dr. Ritchey demands a trial by jury.

## PRAYER FOR RELIEF

Dr. Ritchey prays that the Court enter judgment awarding him the following relief:

A.     Actual damages, including $88,338, interest, and fees;

B.     Attorneys' fees and expenses;

C.     Costs;

D.     Punitive damages;

E.     Pre- and post-judgment interest; and

F.     All other relief Dr. Ritchey is entitled to.


Submitted November 26, 2018.

Respectfully submitted,

Michael Barbee   (*pro hac vice* pending)
    Texas Bar No. 24082656
Casey Griffith       (*pro hac vice* pending)
    Texas Bar No. 24036687
GRIFFITH BARBEE PLLC
Highland Park Place
4514 Cole Ave., Ste. 600
Dallas, Texas 75205
Telephone:        (214) 446-6020
Fax:                    (214) 446-6021
Email: Michael.Barbee@griffithbarbee.com
            Casey.Griffith@griffithbarbee.com


*/s/ John J. Gates*
John J. Gates                    (KS #20226)
BATY, HOLM, NUMRICH & OTTO P.C.
4600 Madison Avenue, Suite 210
Kansas City, MO 64112-3019
Telephone:        816-531-7200
Fax:                    816-531-7201
Email: jgates@batyholm.com

ATTORNEYS FOR PLAINTIFF